FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

99 AUG 25  AM 9: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

JUDY STARK,

      Plaintiff,

vs.                                               CASE NO. CV-98-J-2009-NW

SUNRISE HEALTHCARE GROUP, INC.,
et al.,

      Defendant.

ENTERED

AUG 2 5 1999

## MEMORANDUM OPINION

      Currently pending before the court is the defendant Sunrise Healthcare Group, Inc.'s

("Sunrise") motion for summary judgment (doc. 15), and the defendant Wes Cecotti's

("Cecotti") motion for summary judgment (doc. 14), to which the plaintiff filed responses

("plaintiff's response").   Thereafter, the defendants each filed a reply to plaintiff's

responses.[1]

### I. Procedural History

      Plaintiff commenced this action on or about June 30, 1998 by filing a complaint in the

Circuit Court of Colbert County alleging solely state law claims against the defendants,

including the tort of outrage (Count I), negligent supervision and negligent failure to

terminate (Count II -- against Sunrise only), assault and battery (Count III) and conversion

---

[1]In a separate action against the same defendants, Nancy Brewer, a co-employee of the plaintiff here, sues based on almost identical allegations. *See* CV-98-J-2010-NW, *Brewer v. Sunrise, et al.* Both of the plaintiffs use each others deposition testimony as support for their own allegations, as well as the same documentary evidence. As such, some of Brewer's allegations, the subject matter of a separate lawsuit, are discussed below.

(Count IV -- against defendant Sunrise only).   Complaint at ¶¶ 8-20.   The essence of plaintiff's complaint is that she was sexually harassed, although plaintiff states no cause of action under 42 U.S.C. § 1983.   The defendants jointly removed this case to the United Stated District Court for the Northern District of Alabama on August 6, 1998 (doc. 1), based on diversity of the parties and the amount in controversy being greater than $75,000.00. *See* 28 U.S.C. § 1332.

This court rules as a matter of law that the evidence submitted in support of the plaintiff's claims for various state law causes of action does not support the allegations.   The plaintiff has failed to raise any genuine issues of material fact for a jury to decide.

## II.  Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff began working at Oak Crest nursing home on June 4, 1973.   Plaintiff's brief in response to Sunrise's motion for summary judgment ("plaintiff's brief") at 1; depo. of Stark at 10.   She was the dietary manager and a salaried employee.   Plaintiff's brief at 1; depo. of Stark at 51-52; depo. of Brewer at 61-62. Her supervisor was Nancy Brewer.   Depo. of Brewer at 61-62, depo. of Stark at 82.   Defendant Sunrise leased the Oak Crest nursing home on June 1, 1997.   Depo. of Brewer at 21.   The plaintiff and the administrator, Nancy Brewer were terminated on December 3, 1997.   Depo. of Stark at 52; depo. of Brewer at 20, 45.   The supervisor at the time of the plaintiff's termination was Larry Baird, who had taken that position at the end of September or beginning of October, 1997.   Plaintiff's brief at 1; depo. of Brewer at 76, 163.   Defendant Sunrise also employed a maintenance engineer,

2

defendant Wes Cecotti, who worked out of the Dallas, Texas office and oversaw twenty-eight nursing homes maintenance, housekeeping, landscaping and laundry. Depo. of Cecotti at 40-41. Cecotti's supervisor was Buz Schwitzgoebel. Depo. of Cecotti at 41.

After Mr. Baird took over the position of supervisor, he began getting anonymous phone calls regarding the behavior of the plaintiff and another employee, Judy Stark, towards other employees and the residents of the nursing home. Affidavit of Baird, Exhibit 6 to defendant's evidentiary submissions, at ¶ 4. Based on these anonymous phone calls, Baird sent out a survey asking the employees for their comments on the nursing home's day-to- day functioning. *Id.* at ¶ 5. Baird also arranged a meeting at local hotel for the evening of November 19, 1997. *Id.* at ¶¶ 6, 7. Based on the content of the surveys and the allegations made at the meeting, Baird placed both the plaintiff and Brewer on administrative leave on November 20, 1997. *Id* at ¶ 11, defendant's Exhibit 6, with surveys attached thereto. *See also* depo. of Judy Stark at 141. *See also* affidavit of Rhonda Hanvey, Assistant Director of Nursing at Oak Crest Nursing Home, defendant's Exhibit 5 (stating the Brewer and Stark caused numerous problems at the nursing home).

According to defendant Cecotti, he acts as a consultant to the individual nursing homes in that he can advise them, but cannot hire, fire or get involved in the individual nursing home's maintenance employees' salaries. However, he makes recommendations about work which needs to be done at the individual nursing homes, and stated that at Oak Crest, none of the work he recommended was ever completed. Depo. of Cecotti at 102-103.

3

The plaintiff alleges that on August 6, 1997, while Brewer was out of work sick, defendant Cecotti came to tour the facility and Stark told him that she would be touring with him. Depo. of Stark at 66. She alleged that she, Cantrell and Cecotti were looking at the roof and Cecotti pointed at a roof area in question. Depo of Stark at 72. When Cecotti raised his arm to point at the roof, he allegedly hit Stark in the left breast. Depo. of Stark at 72, 73. Stark states that she knows that Cantrell saw this occur. Depo. of Stark at 72. Stark stated:

A. Well, needless to say I was shocked and in the meantime he goes "Um," and says "I'm surprised you didn't knock my head off." Well, I thought it was an accident, and I said "I thought it was an accident or I would have knocked your head off." But he was standing there with a grin on his face, and when I turned back around and looked at him I don't feel like it was an accident.

Q. Did he say anything after – did he say anything else other than what you just told me?

A. No. He never apologized or said it was an accident or anything

Depo. of Stark at 73. The plaintiff never had any other contact with Cecotti. Depo. of Stark at 76, 80.

In his deposition, Cecotti states that "I remember going out to the parking lot with either Judy or Nancy -- I don't remember which one, and Dennis. I remember the day that we talked about the parking lot and how it was a funnel for water." Depo. of Cecotti at 178. However, he did not remember pointing anything out to the plaintiff. *Id.* He further testified that he does not remember hitting Judy Stark in the left breast that day, nor does he believe it ever happened. Depo. of Cecotti at 178-179, 180.

4

The plaintiff did not tell anyone about this incident the day it occurred (August 6, 1997). The only person she told was Nancy Brewer and that was several day later. Depo. of Stark at 80-81. At the time, Brewer was at home, recovering from surgery. Depo. of Stark at 81. Stark alleges that Brewer asked if Stark wanted her to report this incident and Stark said no. Depo. of Stark at 82, 83; depo. of Brewer at 199. Brewer stated that this conversation with Stark occurred at the end of August. Depo. of Brewer at 200, 201. Interestingly, Brewer states in her deposition that she told Stark to make a note of the incident. Depo. of Brewer at 210. In the plaintiff's evidentiary submissions in support of her response to the defendant Wes Cecotti's motion for summary judgment (doc. 21), attached to the deposition excerpts of Nancy Brewer is an unnumbered exhibit in the form of a letter dated August 6, 1997, by Judy Stark. In this exhibit, Ms. Stark states that Cecotti hit her in the breast with his hand. The letter then states "I told Nancy Brewer about the incident, and she advised me to write it down and she would talk with someone about this problem." Exhibit dated August 6, 1997 attached to Brewer deposition and signed by Judy D. Stark.

Also attached as an exhibit to the deposition excerpts of Nancy Brewer submitted by the plaintiff and numbered Exhibit D-16 is a letter submitted by the plaintiff to the EEOC in rebuttal to defendant Sunrise's response. *See* Exhibit D-16. In this exhibit, the plaintiff states to the EEOC that "I did report the incident to Nancy Brewer when it occurred on August 6, 1997." She also states in that exhibit that the incident was written down on the day it occurred, August 6, 1997. Exhibit D-16. Also in this exhibit, the plaintiff alleges that she

5

stated to Cecotti "keep your hands off me or I will knock your head off." She further states that she told Cecotti at the time that his actions were inappropriate. Exhibit D-16.

However, Stark stated that she knew there was an "800" number she could call to report the incident and that she had to be familiar with the policy because she was a supervisor. Depo. of Stark at 84. Stark stated that she did ask Brewer to report it at a later time, after Ms. Brewer alleged her own incident of harassment.[2] Depo. of Stark at 85.

Mr. Cecotti testified in his deposition that he first learned of these allegations on the day the plaintiff and Brewer were placed on administrative leave, when "Buzz and Cathy called me and said that there was a sexual harassment case against me." Depo. of Cecotti at 181. He was told at the time that this allegation was made by an anonymous phone call.[3] Depo. of Cecotti at 182.

Mr. Cantrell testified that he does not recall meeting with the plaintiff and Brewer in Brewer's office in November when Cecotti hitting the plaintiff's breast was brought up, but testified that it could have happened. Depo. of Cantrell at 55. In his deposition, Mr. Cantrell stated that if anyone had done anything like this to the plaintiff, she would have stood up for herself. Depo. of Cantrell at 57. Cantrell also testified that he did not notice Cecotti touch the plaintiff's breast, but it would not surprise him if it happened accidently because the three

---

[2] Ms. Stark's testimony is that "when it happened to her [Brewer] I decided that we should report it." Depo. of Stark at 88. Ms. Brewer's testimony was that if someone came to her and reported an incident of sexual harassment, she would'[l]isten to the employee, let them write it down and then report it to my supervisor." Depo. of Brewer at 99.

[3] Cecotti's testimony was that Ruth Hayes, the secretary, had received a phone call saying that "this guy" had touched her or molested her and that it was him. Depo. of Cecotti at 182.

6

of them were in a very confined space. Depo. of Cantrell at 57-58, 71. He stated "I know we were all in the breeze way there and what Judy had brought up to me could have possibly happened, but I just didn't -- you know, in that situation, I wouldn't think that would constitute sexual harassment." Depo. of Cantrell at 69. He further explained that where the three of them were standing is "just a tight little area." Depo. of Cantrell at 75.

Mr. Cantrell also testified that on August 6, 1997, the plaintiff asked him if he saw Cecotti hit her in the breast. She told Cantrell that he had touched her breast and said "whew, that was soft." Cantrell states that he told the plaintiff at that time that he did not see that happen. Depo. of Cantrell at 76. The plaintiff did not seem upset or mad when she told him about this incident. Depo. of Cantrell at 79. He does not remember any thing else being said to him about this incident. Depo. of Cantrell at 78.

The plaintiff testified at her deposition that she was in Nancy Brewer's office on November 5 or 6, 1997, when she mentioned to Ms. Brewer (apparently for the first time) that Cantrell saw the alleged incident. Depo. of Stark at 124. She testified:

A. .... And I said, "Dennis, did you hear or see anything that went on the day you were there, the day we were outside?" And he said, "Yes. And frankly I was surprised you didn't knock his head off." He said, "Because I know you well enough to know that you wouldn't stand for something like that," or something to that effect. I don't remember his exact words, but he was shocked that I didn't -- in his words "cold cock" Wes Cecotti in the parking lot.

Q. And what else was said during that conversation? This is in Nancy Brewer's office at Oak Crest; right?

A. Yes. And Nancy said, "So you did see and you did hear?" And he said, "Yes, I did." He saw him touch me and heard the conversation – "I'm

7

surprised you didn't know my head off," and I said "I thought it was an accident or I would have," And he was surprised that I didn't.

Depo. of Stark at 125. The plaintiff states she has never spoken to Cantrell about this incident other than this one occasion in Brewer's office. Depo. of Stark at 126.

The plaintiff testified that Brewer told her that she would talk to Baird about the incident on November 5, 1997, when Baird was there for a regularly scheduled visit. The plaintiff stated that Brewer told her later that she did talk to Baird about it that day. Depo. of Stark at 128. According to the plaintiff, Brewer told her that she told Baird that she wanted to report these incidents and that Baird stated that he didn't want to hear it. Depo. of Stark at 128. She stated that she was sure that Brewer told her that she told Baird about sexual harassment, in some detail. Depo. of Stark at 133-134.

However, Brewer's testimony was that she was not able to discuss this with him that day. Depo. of Brewer at 176. Brewer alleges that she tried to tell Baird, on November 5, 1997, about the incident involving Judy Stark as well as her own allegations of sexual harassment against Cecotti, but Baird would not listen to her. She stated that when she mentioned Wes Cecotti's name to Baird, Baird stated that he wouldn't discuss Cecotti with her because Cecotti had previously complained to Baird about Brewer. Depo. of Brewer at 176. Therefore, Baird left without Brewer ever telling him about the sexual harassment allegations. Depo. of Brewer at 176-177. Consequently, she never told Baird about these incidents before either Stark or Baird being placed on administrative leave. Depo. of Brewer at 176.

8

The plaintiff was placed on administrative leave by Baird on November 20, 1997. Depo. of Stark at 140-141. She was then terminated on December 3, 1997. Depo. of Stark at 156. The plaintiff alleges that since she was terminated, she has "been eating Zantac" because of stomach trouble and that she had a rash from nerves. Depo. of Stark at 195.

The plaintiff also alleges that money she had contributed to her 401K plan was not returned to her. She stated that she has no evidence that defendant Sunrise converted these funds, approximately $300.00, to its own use. Depo. of Stark at 192, 193. She further alleges that the defendant Sunrise did not pay her for 176 hours of vacation time she alleges she accrued. Depo. of Stark at 192.

The plaintiff alleges that she never notified anybody except Brewer about her claims of harassment by Cecotti. Brewer states that a day or two after the two women were placed on administrative leave she tried to report their harassment claims to Baird's supervisor, Buz Schwitzgoebel.[4] Depo. of Brewer at 184-187. She testified that Ruth Hayes, a secretary, answered the phone, stated Mr. Schwitzgoebel was not in, and asked what the call was concerning. The plaintiff told her it concerned sexual harassment, but would not leave her name or the name of the person against whom she was making the charge with Ms. Hayes. Depo. of Brewer at 187. Brewer testified that she never actually told anyone associated with the defendant corporation about these incidents until she called Nikki Mann in the corporate

---

[4]However, Brewer also testified that she went on vacation for four days immediately after being placed on administrative leave and did not call anybody about the alleged harassment until she returned from her vacation. Depo. of Brewer at 184, 186. She also stated that it possibly was before her vacation that she called Nikki Mann. Depo. of Brewer at 187. She also stated that she possibly spoke to her attorney before calling Nikki Mann. Depo. of Brewer at 199.

9

legal department in Arizona. *See* Exhibit D-15 to Brewer's depo. Brewer states that she told

Ms. Mann about her own complaints, as well as those of Judy Stark.[5] Depo. of Brewer at

189.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact that the moving

party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party
> who fails to make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the burden of
> proof at trial. In such a situation, there can be no genuine issue as to any
> material fact, since the complete failure of proof concerning an essential
> element of the non-moving party's case necessarily renders all other facts
> immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears

the initial responsibility of informing the court of the basis for its motion and identifying

those portions of the pleadings or filings which it believes demonstrates the absence of a

genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to

"go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

---

[5]Brewer was asked during her deposition whether she talked to anyone about Judy Stark's claim of sexual harassment against Wes Cecotti before her administrative leave. She responded that "We did not discuss it with anybody. But when I called Texas and Albuquerque it was for both of us." Depo. of Brewer at 207.

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v.  Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,*  477 U.S. at 248. All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,*  814 F.2d 607, 609 (11th Cir. 1987). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252. Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case. *Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## IV. Legal Analysis

### A. Tort of Outrage (Count I)

To establish the tort of outrage, the plaintiff must allege three elements: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe. *Moore v. Spiller Associated Furniture, Inc.*, 598 So.2d 835, 836 (Ala.1992). The court finds that even accepting the plaintiff's version of the facts and her deposition testimony as absolutely true, she makes no showing of the level of harassment by Cecotti necessary to rise to outrageous conduct under Alabama law. In *Thomas v. BSE Industrial Contractors*, 624 So.2d 1041, 1044 (Ala.1993), the court stated that sexual

12

harassment which is egregious is within the tort of outrage.[6] That case relied on *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala.1989).

In *Busby*, the plaintiffs alleged severe, pervasive and repeated incidents of sexual harassment by their supervisor, including obscene and suggestive remarks, gestures and propositions as well as physical contact over an ongoing period of time. The Alabama Supreme Court, counting at least seventeen incidents of harassment, stated that under those particular facts, a jury could reasonably conclude that the supervisor had "intruded into the plaintiffs' sex lives in an offensive and objectionable manner and thereby invaded their right to privacy." *Busby*, 551 So.2d at 324. In Alabama, conduct which rises to the level of "outrageous" must be intentionally inflicted, extreme and outrageous. *American Road Services v. Inmon*, 394 So.2d 361, 365 (Ala. 1981). The conduct of the defendant must be "so outrageous in character and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* The Alabama Supreme Court has recently stated that sexual harassment which is egregious can amount to the tort of outrage. *Henry v. Georgia-Pacific Corp.*, 730 So.2d 119, 121 (Ala.1998).

However, mere insults, indignations, threats, annoyances, petty oppressions or other trivialities do not constitute outrageous conduct. *Mills v. Wex-Tex Industries, Inc.*, 991

---

[6]The Court stated that "the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented." *Thomas v. BSE Industrial Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).

13

F.Supp. 1370, 1386 (M.D.Ala.1997); citing *Saville v. Houston County Healthcare Authority,* 852 F.Supp. 1512, 1519-20 (M.D.Ala.1994) (where court granted summary judgment for defendants where plaintiff alleged two non-consensual touchings of her buttocks, harassing statements, lewd comments and sexual advances). Neither mere requests for sexual favors, nor demands which, if refused, carry consequence of economic loss or loss of status at employment are sufficient. *Brewer v. Petroleum Suppliers, Inc.*, 946 F.Supp. 926, 936 (N.D.Ala.1996).

Assuming every allegation the plaintiff has made is true, on August 6, 1997, defendant Cecotti hit her breast while pointing to a place on the roof that was being discussed by them. This is simply wholly insufficient to support a claim for outrage. Rather, these facts constitute either an annoyance or a triviality.   *See Mills*, 991 F.Supp. at 1386; *see also McIsaac v. WZEW-FM Corp.*, 495 So.2d 649, 651 (Ala.1986) (where the court stated that where the plaintiff alleged unwanted kissing, dinner invitations and the like, no evidence of severe emotional distress was presented and summary judgment was appropriate as the defendant's behavior extended to mere insults, indignities, threats or annoyances); citing *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121 (Ala. 1985).[7]  No evidence has been put before this court to support the plaintiff's contention even viewing the facts in the light most favorable to the plaintiff that Cecotti's behavior was "outrageous, so as to be utterly

---

[7]Under the same authority, the court in *McIsaac* held that the same actions were also insufficient to constitute a claim for invasion of privacy.

14

intolerable in a civilized society, and was calculated to, and did in fact cause severe emotional stress to the plaintiff.[8] *See* plaintiff's complaint at ¶ 9.

Here, the evidence shows, at most, that on one occasion Cecotti hit the plaintiff's breast, very possibly by accident. The plaintiff offered as evidence three different versions of when she notified anyone about the incident, ranging from that same day to some time at the end of the month. However, no matter which of these versions the court accepts as true, the facts simply do not support a claim of outrage. The court finds the evidence submitted by the plaintiff and consisting mainly of her own testimony, to be contradictory and nonsensical. The court is unable to find that, assuming the plaintiff is being truthful, this one incident rises to the level of outrageous conduct on the part of Cecotti. Annoying, perhaps, but not outrageous or egregious.

### Negligent Supervision/Failure to Terminate (Count II)

While the plaintiff alleges in her complaint a count for negligent supervision/failure to supervise, the brief submitted in response to the defendant's motion for summary judgement states "The defendants have offered no evidence to suggest Cecotti was not at the Oak Crest nursing home for a business purpose when he sexually harassed Brewer." Plaintiff's brief at 7. Even assuming that this constituted a legal standard, whether or not Cecotti ever harassed Brewer has no bearing on the plaintiff's claim for harassment.

---

[8] The plaintiff here also alleges that since she told her administrator, namely Brewer, about the incident, and no corrective action was taken, Sunrise is liable for the action of Cecotti. Plaintiff's complaint ¶ 9. However, even assuming that the court could find some wrong rising to the level sufficient to survive a motion for summary judgment in the actions of Cecotti as alleged by plaintiff, the plaintiff offers no evidence that any further event ever occurred

15

In the facts before this court, there is no evidence that the defendant Sunrise knew or should have known about Cecotti's alleged conduct, because by the plaintiff's own testimony (at least one version of it) she specifically told her supervisor not to report her allegation and her supervisor respected her wishes. This falls far short of the plaintiff's burden of affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence. *Portera v. Winn Dixie of Montgomery,* 996 F.Supp. 1418, 1437 (N.D.Ala.1998); citing *Ledbetter v. United Am. Ins. Co.*, 624 So.2d 1371 (Ala.1993). *See also Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885,889 (Ala.1995). "The mere fact of an injury occurring is not evidence of negligence, and in negligent supervision cases, negligence will not be found by inference." *N.J. v. Greater Emanuel Temple Holiness Church*, 611 So.2d 1036, 1037 (Ala.1992).

## Employer Liability

For Sunrise Corporation to be held liable for either the intentional torts of Cecotti's, the plaintiff must show that (1) Cecotti's wrongful acts were committed "in the line and scope of employment"; *Busby*, 551 So.2d at 326, citing *Jessup v. Shaddix*, 275 Ala.281, 154 So.2d 39 (1963); or (2) that the acts were committed in furtherance of Sunrise's business, *Solmica of the Gulf Coast, Inc. v. Braggs*, 285 Ala. 396, 232 So.2d 638 (1970); or (3) that Sunrise participated in, authorized or ratified the wrongful acts; *Joyner v. AAA Cooper Transportation*, 477 So.2d 364, 365 (Ala.1985). *See Mardis,* 669 So.2d at 889; *Potts v. BE & K Construction Co.*, 604 So.2d 398, 400 (Ala.1992).   The determination of whether the

16

conduct is within the line and scope of his or her employment depends upon the service in which the employee is engaged. *Doe v. Swift*, 570 So.2d 1209, 1211 (Ala.1990)("the conduct of the employee ... must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment").

In *Doe*, the Alabama Supreme Court stated that sexual misconduct, including assault and battery by an employee, is purely personal and outside the line and scope of his employment. *Doe*, 570 So.2d at 1211. *See also Busby*, 551 So.2d at 327, citing *Inmon* ("Here, Deaton's conduct was aimed purely at satisfying his own lustful desires; no corporate purpose could conceivably be served by his overtures. The plaintiff's ... complaints were sufficient to notify Farley that something was wrong, but not that Deaton's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society").

The plaintiff here argues that Sunrise "ratified" the acts of Cecotti. To show that Sunrise authorized or participated in Cecotti's acts or ratified his conduct, the plaintiff must show that Sunrise (1) had actual knowledge of Cecotti's allegedly tortious conduct and that the tortious conduct was directed at and visited upon the plaintiff; (2) that based upon this knowledge, Sunrise knew, or should have known, that such conduct constituted a tort; and (3) that Sunrise failed to take adequate steps to remedy the situation. *Mardis*, 669 So.2d at 889; citing *Potts v. BE & K Construction Co.*, 604 So.2d at 400.

17

The plaintiff is unable to show any ratification or even knowledge on the part of defendant Sunrise of Cecotti's behavior on or before the date she was put on administrative leave before being terminated on December 3, 1997. *See Kelly v. Worley*, 29 F.Supp. 1304, 1311-1312 (M.D.Ala.1998). Accordingly, this court finds that the plaintiff has failed to create a genuine issue of material fact regarding the employer-defendant's liability for Cecotti's actions. *See Busby*, 551 So.2d 322 (where court held that plaintiffs notifying management in general terms of the harassment without giving details and without giving the company time to correct the situation was insufficient for the company to be liable on the claim of outrage).

## Assault and Battery (Count III)

An assault and battery is defined as any touching by one person of the person or clothes of another in rudeness, in anger, or in a hostile manner. An intent to injure is not required. *Mills*, 991 F.Supp. at 1382, citing *Prescott v. Independent Life & Accident Ins. Co.*, 875 F.Supp. 1545 (M.D.Ala.1995)(other citations omitted). The defendants here argue that an "inadvertent bumping" does not support an assault and battery claim. Relying on *Allen v. Walker*, 569 So.2d 350, 351 (Ala.1990), the defendants state that the plaintiff must show "an intentional touching in a rude or angry manner." The tort is further defined as that the touching must create in the mind on the party alleging assault a well-founded fear of an *imminent* battery, coupled with the apparent present ability to effectuate the attempt if not prevented. *Allen*, 569 So.2d at 351, citing *Western Union Telegraph v. Hill*, 25 Ala.App. 540, 542, 150 So. 709, 710 *cert. denied* 227 Ala. 469, 150 So. 711 (1933); *Holcombe v.*

18

*Whitaker*, 294 Ala. 430, 435, 318 So.2d 289, 294 (1975). *See also Scott v. Estes*, 1999 WL 606884 at 10 (M.D.Ala. Aug. 4, 1999); citing *Allen, supra*. The court here finds that the plaintiff, in her deposition, stated that when Cecotti allegedly touched her in an unwanted manner, she thought it was an accident. Depo. of Stark at 82.

## Invasion of Privacy[9]

Under the theory of an intrusion upon the seclusion of a person as constituting the alleged invasion of privacy of the plaintiff, the wrong consists of "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW-FM Corp.*, 495 So.2d at 651 (where court found that employer's conduct in asking female employee to "be available," trying to kiss her and then attempting to have her fired for resisting his advances did not establish an invasion of privacy claim). *See also Scott v. Estes*, 1999 WL 606884 at 11 (where court found that *repeatedly* conditioning receipt of promotion on giving into sexual advances and allegation of sexual assault sufficient to survive motion to dismiss).

The plaintiff relies on *Phillips v. Smalley Maintenance Services*, 435 So.2d 705 (Ala.1983) to support her argument that sexual harassment can form the basis for an invasion of privacy claim. What *Phillips* does not support is plaintiff's claim that Cecotti's behavior here rises to the level of an invasion of privacy. In *Phillips,* the plaintiff alleged that her boss called her into his office, locked the door, asked how often she and her husband had sex and

---

[9]Although the plaintiff states no claim for the tort of invasion of privacy in her complaint, she includes an argument concerning this tort in her brief. Thus, for the sake of thoroughness, the court addresses this argument.

what "positions" they used two to three times a week. The defendant also asked her whether she had ever engaged in oral sex; insisted that she have sex with him or risk losing her job, knowing that her family depended on her income; and got angry at her and insisted that she have oral sex with him at least three times a week. *Phillips*, 435 So.22d at 707. In contrast, hitting the asking the plaintiff for a date and making sexual propositions usually do not constitute an invasion of privacy, although *extensive* inquiries into one's sex life or looking up one's skirt might. *Ex parte Atmore Community Hospital*, 719 So.2d 1190, 1194 (Ala.1998). The facts alleged before the court here simply do not constitute a wrongful intrusion into the plaintiff's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac*, 495 So.2d at 651.

While the plaintiff argues that the evidence in the light most favorable to her shows that Cecotti touched her breast, no evidence supports her claim that he touched it in "a sexual and intrusive manner." See plaintiff's brief at 10. The court, having read every deposition excerpt, affidavit and exhibit submitted, simply can find no evidence of any form of sexual harassment, invasion of privacy, outrageous behavior or assault in Cecotti's actions. The plaintiff does not allege that "grabbed" her breast in an intentional gesture, but rather that he "hit" it as he was pointing to an area on the roof of the building. Dpeo. of Stark at 72. This court is unable to find facts sufficient to raise a genuine issue of material fact as to the plaintiff's invasion of privacy claim.

### Conversion (Count IV)

The plaintiff has submitted no evidence in support of her claims for conversion beyond her own deposition testimony. No pay stubs showing either accrued vacation time nor 401K contributions have been submitted. Evidence sufficient to support the creation of genuine issues of material fact on this count of the complaint is simply nonexistent.

### Conclusion

This court, having considered all of the evidence submitted by the parties, finds that the plaintiff fails in her burden to show any evidence sufficient to survive the defendants' motions for summary judgment.   The court finds that, as a matter of law, the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.   The evidence presented by the parties does not create a sufficient disagreement on material facts as to require submission to a jury. *See Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252. Lacking is substantial evidence of the allegations underlying the plaintiff's complaint.

As such, the court being of the opinion both defendant's motions for summary judgment are due to be granted;

It is therefore **ORDERED** by the court that defendant Sunrise's motion for summary judgment be and hereby is **GRANTED** on all counts of the complaint.

21

It is further **ORDERED** by the court that defendant Cecotti's motion for summary judgment be and hereby is **GRANTED** on all counts of the complaint.

This case is **DISMISSED** with **PREJUDICE**.

**DONE** and **ORDERED** this the _____ day of August, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

22